## Young and Wife *versus* Babilon.

The wife of B. acquired by descent an undivided interest in a tract of land. B. subsequently purchased the remaining interests from the brothers of his wife. B. died intestate, and his daughter petitioned the Orphans' Court for partition, the petition setting forth the title of decedent, but containing no recital of the widow's interest. The widow appeared and consented to the partition, and a purpart was awarded to the daughter, who brought an action to eject the mother therefrom. *Held*, that the widow was estopped from setting up her title by having approved the order of court making partition, and having agreed that it should be finally confirmed.

October 11th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county* : Of October and November Term 1879, No. 123.

Ejectment by Peter Young and Lenah Young, his wife, in right of said Lenah, for a tract of land.

Ignatius Krabb died intestate, seised of sixty acres of land, and leaving a daughter, Barbara, intermarried with Joseph Babilon, and two sons, Joseph and Philip. Babilon took a deed for thirty-two acres of said tract from the two brothers and died intestate. His daughter Lenah petitioned the Orphans' Court to partition his land, and recited in said petition the deed from Joseph and Philip as her father's title to the land. The partition was made. The Krabb family mansion was on the purpart allotted to Lenah Young, and she brought this action against her mother to recover it. In the proceedings in the Orphans' Court Barbara was named as widow, and her counsel signed an agreement setting forth that she was "satisfied with the decree," and that she did "agree that the same be entered, approved and confirmed absolutely."

At the trial the verdict was for the plaintiffs, subject to the opinion of the court whether Barbara was estopped from setting up her title by reason of her action in the partition proceedings. The court, Bailey, J., in an opinion, inter alia, said:

"We do not think that the facts herein bring this case clearly within any of the three ingredients of estoppel, set forth in Com-

[Young v. Babilon.]

monwealth v. Moltz, 10 Barr 531, and which we think are applicable here. This plaintiff was the petitioner in the Orphans' Court for the partition, and as heir-at-law of the decedent she is chargeable with knowledge of the title, or want of title, of her ancestor. The very deed referred to in her petition (which she did not offer here as the foundation of her title), and her knowledge of her mother's family, were quite enough to put her upon inquiry which would inevitably have led to the correction of the erroneous statement of decedent's title in her petition. * * *

"As was decided in Feather v. Strœhecker, 3 P. & W. 508, 'if the whole or any less estate of freehold be evicted in all or any part of a particular purpart the parties are remitted to their original rights,' 'and the partition may be avoided in the whole:' Seaton v. Barry, 4 W. & S. 185; s. p. Strohecker v. Housel, 3 Clark 379.

"We, therefore, order that judgment be entered in favor of defendants, notwithstanding the verdict, upon payment by them of the verdict fee."

This entry of judgment was assigned for error by plaintiffs, who took this writ.

*Barton & Sons*, for plaintiff in error.—The widow was estopped by matter of record, by the judgment and decree of a court of competent jurisdiction in an action in which she was a party—a judgment and decree entered at her instance and at the request of her counsel in writing.

The deed in evidence from Joseph Krabb and Philip Krabb to Joseph Babilon, set forth in the petition for partition, recites that they are the only heirs-at-law of said Ignatius Krabb. And so far as the record title goes the legal title was in Joseph Babilon at the time of his decease. His widow, Barbara, now comes in and denies the allegations in this deed, and says that she was also a daughter and heir of said Ignatius. This fact was certainly known to her at the time she agreed to the decree in partition, and to allow her now to set up this alleged title in herself would be a gross fraud on the other parties.

*Montooth Bros.* and *C. C. Taylor*, for defendants in error.—The very deed which Lenah sets forth in her petition shows that her mother had never parted with the title which had descended to her from her father, and that she still had her interest in her father's estate. When the widow appeared in the partition proceedings she did so to a proceeding for the partition of Joseph Babilon's estate, and not that of Ignatius Krabb's. She had a right to assume that no land but that of which Joseph Babilon died seised was included therein, nor was she or her counsel

required to examine the petition to ascertain whether Ignatius Krabb's property had been embraced in it or not.

Mr. Justice GORDON delivered the opinion of the court, October 27th 1879.

There is not much doubt that the title to at least one-third of the land in controversy was vested in Barbara Babilon, widow of Joseph Babilon, deceased, by descent from her father, Ignatius Krabb, and if she did nothing whereby, in equity, she ought to be restrained from asserting that title, she was entitled to a verdict. In order to come to a proper conclusion in this inquiry, we must, at least partially, review the facts of the case.

Ignatius Krabb died, about the year 1867, seised in fee of these premises. Joseph Babilon claimed to hold by virtue of a parol agreement with Krabb, according to the terms of which he was to have the land on payment of $300, to one of Krabb's sons. About the time of or soon after Krabb's death, he obtained the deed, not only of Philip, the son, to whom he was to pay the $300, but also of his brother Joseph. These, with Barbara, were all of the heirs of Ignatius Krabb. Now, granting that the parol sale was worthless, yet his wife knew, no doubt, that Joseph Babilon did claim the land by virtue of it, and of the deed from her brothers and co-heirs, for it is scarcely credible that the wife would not know how her husband professed to own the premises which for so many years had been their home. Moreover, she certainly knew that her father, in his lifetime, had owned this land and that she was one of his heirs. Her husband died in the year 1872, possessed of the land in dispute, and the writ of partition which forms an important part of this case, was not sued out until 1877, so that if she had any doubt about or was ignorant in any particular concerning her own rights in the premises, she had most ample time for information and inquiry, and if she still remained ignorant, if she was not fully posted in every particular, it was her own fault. This then was her position when the writ of partition was served upon her. She knew her husband had claimed to own this land; that he died possessed of it; that it was now claimed as part of his estate, and that it was, with other lands, about to be divided among his heirs. Surely if under these circumstances she will now stand by, and without objection permit this process to proceed to a final decree, she ought to be estopped and her previous rights treated as for ever abandoned. She is legally a party to the record, and if she wittingly and willingly allows a solemn decree to be entered against her title, I know not how, in a collateral proceeding, she can afterwards avoid that decree. But not only did she passively allow this process of partition to culminate in a final decree, but she actively engaged in its promotion. She, by her attorneys, endorsed and

[Young v. Babilon.]

approved of the order of the court and agreed that it should be finally confirmed.

The result of this was, that not only were the several purparts ascertained and awarded to the accepting heirs, inter alia, the one in suit to Lenah Young, the plaintiff, the widow's dower settled, the costs and a mortgage against the premises paid, but also, owelty to a non-accepting heir, ascertained, decreed and in part, if not in whole, paid. Here then is a record which the defendant deliberately helped to make; a record certainly equivalent to her own deed, not only by force of legal intendment, but in fact, for it is endorsed by the sign manual of her own attorneys. How then can she escape from its consequences?

If, as was said in Chapman v. Chapman, 9 P. F. Smith 214, mere silence will postpone a title, where one knowing his own right suffers his silence to lull to security an innocent purchaser, instead of warning him of danger, much more should a judicial decree asserted to have that effect. So it was held in Nass v. Vanswearingen, 10 S. & R. 146, that a party who stands by at a sale of his own property, though under a void authority, and encourages a purchaser to bid, is guilty of a direct fraud, and will be estopped from alleging title against such purchaser. To a like effect is Epley v. Witherow, 7 Watts 165, and Carr v. Wallace, Id. 400.

All these, however, are cases of estoppel *in pais*, and hence are less strong than the case in hand, where the estoppel arises from a record, a record deliberately assented to by the defendant herself. Neither do the precedent facts entitle her to special consideration, for the arrangement between her father and her husband, though in strictness of law conferring no title upon the latter, yet having been acquiesced in for so long a time by all parties in interest, she, in all conscience, ought to have been bound by it. Furthermore, we cannot understand why, without this, Joseph Babilon's title to the two-thirds of the property which he acquired from his wife's brothers was not perfectly good.

The learned judge of the court below said, on the authority of Feather v. Stroehecker, 3 P. & W. 505, that Lenah having been evicted from her purpart, the partition in whole might be avoided. This might be true in a proper case, but it is certainly not to be avoided in the interest of one who, like the defendant, was active in the production of the decree, and who was the means of imposing upon the parties thereto costs and expenses that cannot be restored to them; for it is not Lenah who seeks to avoid this partition, but Barbara, the defendant. To permit this would be to sanction a great wrong, and one that would result only to the advantage of the wrongdoer, a result which in equity cannot be tolerated.

As we must reverse this case and enter judgment on the verdict, the question raised upon the character of the notice, necessary

[Young *v.* Babilon.]

in order to recover mesne profits in the action of ejectment, becomes unimportant.

> The judgment of the court below is reversed, and it is ordered that judgment be entered on the verdict for the plaintiffs, for the land described in the writ, with six cents damages and costs.